The Honorable Barbara J. Rothstein

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

10431 AVONDALE ROAD NE LLC,

        Plaintiff,

        v.

COMCAST CABLE COMMUNICATIONS,
LLC, and COMCAST CABLE
COMMUNICATIONS MANAGEMENT,
LLC, and MASTEC SERVICES
COMPANY, INC., MASTEC NETWORK
SOLUTIONS, INC., MASTEC NETWORK
SOLUTIONS, LLC, MASTEC NORTH
AMERICA, INC., and MASTEC, INC.,

        Defendants.

No. 2:25-cv-01553-BJR

**PLAINTIFF'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070  Fax: (425) 646-3467

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND RELIEF REQUESTED .................................................. 1

II.   FACTS .................................................................................................................. 2

      A.    Comcast's Easement and Licensing Agreement with Plaintiff.................... 2

            1.    Defining Grantee, Grantee's Affiliate Companies, and Grantee's
                  Successor Under the Easement ........................................................ 3

            2.    Defining  "Any Use" for "Any Purpose" Under the Easement ....... 3

      B.    Comcast Impermissibly Allowed King County and LWSD Physical
            Use of Plaintiff's Property for Years ......................................................... 4

            1.    Comcast Was Dishonest About King County's Unauthorized
                  Use of Plaintiff's Property .............................................................. 4

            2.    Plaintiff Learns of King County's Unauthorized Use of its
                  Property ........................................................................................... 6

                  a.    Photographs.......................................................................... 6

                  b.    Emails ................................................................................... 8

                  c.    Access Logs ......................................................................... 8

            3.    Plaintiff Learns of LWSD's Unauthorized Use of Plaintiff's
                  Property........................................................................................... 8

            4.    Plaintiff Has Incurred Substantial Damages Due to Comcast's
                  Breach of the Licensing Agreement ............................................. 14

III.  AUTHORITY ................................................................................................... 14

      A.    Summary Judgment Standard ................................................................... 14

      B.    Comcast Breached its Contractual Obligations and its Implied Duty of
            Good Faith When it Breached the Licensing Provision of the Easement .. 15

            1.    Standard for Breach of Contract in Washington........................... 15

            2.    By Allowing King County and LWSD to Physically Use
                  Plaintiff's Property, Comcast Breached the Easement ................. 16

            3.    Standard for Breach of an Implied Duty of Good Faith and Fair
                  Dealing in Washington ................................................................. 17

            4.    Comcast Breached Its Implied Duty of Good Faith and Fair
                  Dealing......................................................................................... 19

      C.    Comcast Breached its Obligations Under RMC 5.60.230(E) and RMC
            12.14.510 When it Allowed Unauthorized Use of Plaintiff's Property ..... 21

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - ii
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

D.   Comcast Breached its Statutory Duties Under Federal and Municipal
     Law When it Failed to Pay for Property Taxes........................................... 22

     1.   Comcast Breached 47 U.S.C. §541(a), RMC 12.14.510, and
          RMC 5.60.230(E) When it Failed to Pay its Share of
          Property Taxes ................................................................. 22

     2.   47 U.S.C. § 207 Provides a Mechanism for Plaintiff to Enforce
          its Rights Under 47 U.S.C. § 541(a)(2)(B)-(C) ............................ 24

IV.  CONCLUSION........................................................................................... 24

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - iii
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

## I.    INTRODUCTION AND RELIEF REQUESTED

Plaintiff 10431 Avondale Road NE LLC ("Plaintiff") seeks partial summary judgment against Defendants Comcast Cable Communications, LLC, and Comcast Cable Communications Management, LLC (collectively, "Comcast"), on the following issues:

1.    Did Comcast breach the licensing provision in Section 4 of the Easement when Comcast impermissibly allowed King County and/or LWSD to make physical use of Plaintiff's property without first procuring Plaintiff's permission and without paying Plaintiff compensation for use of Plaintiff's property as required by Section 4 of the Easement? [Yes].

2.    Did Comcast breach its implied duty of good faith and fair dealing when it breached the licensing provision in Section 4 of the Easement when Comcast allowed King County and/or LWSD to make physical use of Plaintiff's property without first procuring Plaintiff's permission and paying Plaintiff compensation as required by Section 4, concealed such breach, and evaded the spirit of the bargain under the Easement? [Yes].

3.    Did Comcast breach RMC 5.60.230(E) and/or RMC 12.14.510 when Comcast impermissibly allowed King County and/or LWSD to make physical use of Plaintiff's property without first procuring Plaintiff's permission and without paying Plaintiff compensation for use of Plaintiff's property? [Yes].

4.    Did Comcast breach 47 U.S.C. § 541(a)(2)(B)-(C), RMC 5.60.230(E), and/or RMC 12.14.510, when Comcast failed to reimburse Plaintiff with Comcast's pro-rata share of the property tax expenses associated with Comcast's building on Plaintiff's Property? [Yes].

Summary judgment for Plaintiff on Plaintiff's claims for breach of contract and breach of the implied duty of good faith and fair dealing is warranted because reasonable persons could only reach one conclusion: Comcast breached its contractual obligations under Section 4 of the Easement when Comcast allowed King County and LWSD to make physical use of Plaintiff's Property without first procuring Plaintiff's permission and paying Plaintiff compensation as required by the licensing provision under Section 4 of the Easement.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1    Similarly, summary judgment for Plaintiff on Plaintiff's statutory claims is proper

2  because Comcast breached its duties under 47 U.S.C. § 541(a)(2)(B)-(C), RMC 5.60.230(E),

3  and/or RMC 12.14.510 when Comcast failed to reimburse Plaintiff with Comcast's pro-rata

4  share of the property tax expenses associated with Comcast's building on Plaintiff's property.

5  Comcast built and operates a building on Plaintiff's property, yet it refuses to pay for the

6  property taxes associated with Comcast's building.

7                                    II.    FACTS

8        A.    **Comcast's Easement and Licensing Agreement with Plaintiff**

9        Plaintiff owns King County Tax Parcel 312606-9049 ("Property"). *See* Declaration

10  of Siddharth Jha, Dkt. #47, ¶¶8-14. In 1999, Plaintiff's predecessors, James and Lisa Smith

11  ("Smiths"), apparently granted Vista Television Cable, Inc. ("Vista") a non-exclusive

12  easement in gross over certain portions of Plaintiff's Property by way of the Easement

13  Agreement recorded under King County Recording No. 19990923001391 ("Easement"). *Id.*

14        In 2000, the Smiths apparently granted Vista an additional non-exclusive

15  Underground Distribution Easement over certain parts of the Property by way of the

16  Easement recorded under King County Recording No. 20000322000879 ("2000 Easement").

17  *Id.*, ¶¶12-13. The 1999 and 2000 Easements are collectively referred to as the "Easement."

18        Section 4 of the Easement prohibits certain parties from making "***any use***" of

19  Plaintiff's Property for "***any purpose***" unless Comcast first obtains Plaintiff's permission and

20  pays compensation to Plaintiff for such use. *See* Dkt. #47-1, Pg. 3. Under Section 4, before

21  there is "***any use***" of Plaintiff's Property for "***any purpose***" by a party other than Comcast,

22  Comcast's affiliates, or Comcast's successor, Comcast is required to procure Plaintiff's

23  permission and pay Plaintiff compensation for the use of Plaintiff's Property (*Id.*):

24        4.    **Assignment**.  Grantee may assign this Easement Agreement to any entity or
      individual.  No additional consent to such assignment is required from Grantors other than the
25    execution of this Agreement. This does not constitute consent to nor authorize Grantee to allow
      other parties to use the Property for any purpose.  Any use of the Property by a party other than
26    Grantee, its affiliate companies or its successor must be approved by Grantors, which approval shall
      not be unreasonably withheld, provided, that Grantors may require reasonable compensation for
27    such approval.

---

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2
Case No. 2:25-cv-01553-BJR

1      **1.      Defining Grantee, Grantee's Affiliate Companies, and Grantee's Successor Under the Easement**

Under the licensing provision in Section 4 the Easement, three classes of users are exempt from triggering the compensation and permission requirements: the "Grantee, its affiliate companies, or its successors[.]" *Id.* Each are defined below:

- **Grantee:** the Easement defines "Grantee" as "Vista Television Cable, Inc." The current grantee is Comcast, successor to the original Grantee under the Easement.

- **Grantee's Affiliate Companies:** "its affiliate companies" under the Easement are affiliates of Comcast Cable Communications, LLC, the current grantee under the Easement. In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009), the Ninth Circuit defined "affiliates" as "affiliate refers to a corporation that is related to another corporation by shareholdings or other means of control…" (citations omitted). Specifically, "[t]he plain and ordinary meaning of "affiliate" supports this definition as "a company effectively controlled by another or associated with others under common ownership or control." *Id*. Under the Easement, "its affiliate companies" means an "affiliate" company of Comcast, which is limited to those entities owned by Comcast Corporation.

- **Grantee's Successor:** Grantee's "successor" under the Easement is Comcast, which is the successor to the original grantee under the Easement, Vista.

Comcast does not dispute King County and LWSD do not fall within the definition of Grantee (Vista/Comcast), Grantee's affiliate companies (Comcast's affiliate companies), or Grantee's successor (Comcast) under the Easement.

      **2.      Defining  "Any Use" for "Any Purpose" Under the Easement**

"Any" includes "all" as "any" is indeterminate and includes each and every or singular. *Harrington v. Interstate Businessmen's Accident Ass'n*, 210 Mich 327, 330; 178 NW 19 (1920) ("'Any' means 'every,' 'each one of all.'") Courts have rejected the interpretation that "any" means anything less than "all" possible outcomes. *Gibson v. Agricultural Life Ins Co*, 282 Mich 282, 284; 276 NW 450 (1937) (rejecting "any" meant anything less than "all").

Black's Law Dictionary defines "any" as "[o]ne indiscriminately of whatever kind of quantity…It is often synonymous with 'either,' 'every,' or 'all.'" Merriam-Webster's also defines "any" as "every—used to indicate one selected without restriction."

"***Any use*** of the Property" for "***any purpose***" is expansive and covers every conceivable type of use of Plaintiff's Property, including any type of physical use, regardless of its purpose, duration, location, or intentions. Thus, the portion of the licensing agreement prohibiting "***any use*** of the Property" for "***any purpose***" is not limited to restricting any one particular type of use (*i.e.*, prohibiting only certain types of use of the Property or use in a certain area). "***Any use*** of the Property" for "***any purpose***" covers ***every conceivable type*** of use, regardless of the professed reason for such use.

### B. Comcast Impermissibly Allowed King County and LWSD Physical Use of Plaintiff's Property for Years

#### 1. Comcast Was Dishonest About King County's Unauthorized Use of Plaintiff's Property

In July 2023, Plaintiff sued Comcast for damage caused by Comcast's trucks. At the time Plaintiff sued Comcast in state court, Plaintiff was unaware Comcast allowed King County or LWSD to physically use Plaintiff's Property in violation of the Easement.

In fact, throughout the entire first case, Comcast repeatedly made material misrepresentations in an effort to prevent Plaintiff from ascertaining whether Comcast allowed others to impermissibly use Plaintiff's property. For example, consider the statements made by Gary Taylor, Comcast's senior-most Washington employee involved in the dispute:

> 14. The County does not keep or maintain any of its own equipment in the Redmond Secondary Hub Site. There are no County-owned routers or switches on site. County employees access the Redmond Secondary Hub Site for the sole purpose of making cross connections necessary of leased fiber optic wires necessary for the operation of the I-Net. Except for the physical presence of their employees when accessing the site, the County makes no physical use of the Redmond Secondary Hub Site.

*See* Declaration of Ryan Yoke, Dkt. #46, Pg. 19.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

Even Comcast's counsel (Rhys Farren) tried to mislead Plaintiff and conceal King County's use of Plaintiff's property *after* counsel visited the property and was aware of such third party use: "There is no physical use of – by third parties." *See* Dkt. #46, Pg. 209:11-12.

Such brazen dishonesty is likely why Comcast routinely ranks number one on the list of America's Most Hated Companies,[1] and sees headlines such as, "Comcast Is America's Most Hated Company",[2] and "America Hates Comcast More Than Ever".[3] *Comcast even ranks lower than the IRS:* "Comcast and Charter rate worse than some of the most disliked companies and organizations in America, consistently beating the airline industry, banks, insurance companies and even the IRS in terms of consumer dissatisfaction." *Id.*

"For the better part of two decades the newswires have been filled with horror stories about the dumpster fire that passes for Comcast…," where "Comcast has long provided a master class to any company looking for a lesson on how **not** to behave[.]" (emphasis original). *Id*. In an article titled, "Comcast the second-most-hated company in America",[4] the Seattle Business Magazine explained how Comcast was a struggle to deal with: "It's not just you. Pretty much everyone hates Comcast." Even Comcast's hometown newspaper concedes Comcast is universally loathed, explaining that, "Everyone —and I mean EVERYONE — hates Comcast," and that, "Just bringing up the company's name provokes raw anger."[5]

In fact, Comcast is so universally despised that Comcast's counsel in this case even had an entire article written about how they represented one of the most "unsympathetic defendants" of all times in a suit brought by the State of Washington: "Of all the unsympathetic defendants a lawyer might represent—murderers and kidnappers and thieves— the brave souls at [Wilmer Hale and DWT] went to bat for some of the most despised of all: Comcast customer service representatives."[6]

---

[1] https://247wallst.com/special-report/2017/01/10/americas-most-hated-companies-4/
[2] https://www.pcmag.com/news/comcast-is-americas-most-hated-company
[3] https://www.vice.com/en/article/america-hates-comcast-more-than-ever/
[4] https://seattlemag.com/comcast-second-most-hated-company-america/
[5] https://www.phillymag.com/news/2014/05/30/three-reasons-everyone-hates-comcast/
[6] Jenna Greene, Why Wilmer Is the Real Winner in Washington AG's Suit Against Comcast, THE AM LAW LITIGATION DAILY, Jun. 11, 2019, link.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

As Gov. Bob Ferguson said after the state's $9.1 million victory against Comcast because Comcast deceived Washington customers, "Comcast sent an army of corporate lawyers into court to try to avoid accountability." *Id.* The same is true here. For years, Comcast has sent an army of corporate lawyers in order to avoid accountability, even if it means deliberately concealing unauthorized illicit use of Plaintiff's property.

### 2. Plaintiff Learns of King County's Unauthorized Use of its Property

Plaintiff eventually learned Taylor's highlighted statements above were ***completely*** untrue. In late September 2024, Plaintiff learned for the first time that Comcast allowed King County unauthorized use of Plaintiff's Property for decades. *See* Dkt. #47, ¶¶31-34. Comcast allowed such use by King County to occur without first procuring Plaintiff's permission and without paying Plaintiff compensation in violation of Section 4 of the Easement. *Id.*

### a. Photographs

As a result of public records requests made by Plaintiff, King County produced thousands of pages of emails and photos. *Id.* Plaintiff learned Comcast allowed King County to make extensive unauthorized physical use Plaintiff's Property for decades. *Id.* Photos produced by King County reveals several machines on Plaintiff's property have the "Property of King County" label on them, indicating they are owned and operated by King County:



*See* Dkt. #47, ¶¶30-45; *see also* Dkt. #47-1, at 38-102; Dkt. #47-1, at 100-101.

For example, the entire system below is one of several systems Comcast admits King County installed on Plaintiff's Property (*compare* Dkt. #62, Pg. 4 *with* Dkt. #47-1, Pg. 100):

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20   *See* Dkt. #47, ¶¶39-40 ("Property of King County" label circled in red); Dkt. #47-1, at 100.

21       Plaintiff has produced numerous photos showing various servers, switches,

22   machines, equipment, apparatuses, conduits, cables, and wires that Comcast allowed King

23   County to set up on Plaintiff's property, including some that are roughly the size of a large

24   fridge. *See* Dkt. #47, ¶¶30-45; *see also* Dkt. #47-1, at 38-102.

25       Faced with indisputable photos showing King County physically uses Plaintiff's

26   Property, ***Comcast concedes King County uses Plaintiff's property.*** *See* Dkt. #62, at 4:15

27   ("King County owns ***no other*** equipment at the Redmond Hub.") (emphasis added); *Id.*, 4:26-

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

5:1 ("King County has always had its equipment on a light gray two-post swing rack in Redmond."); and *Id.*, 5:22-23 ("[t]he King County equipment is quiet; it does not emit any material noise.") Those admissions corroborate Plaintiff's photographic evidence.

### b.    Emails

King County produced thousands of pages of emails between Comcast, King County, and LWSD from the early 2000s to 2025 revealing that Comcast allowed King County and LWSD to physically use Plaintiff's Property without Plaintiff's permission since the early 2000s. *See* Dkt. #47, ¶¶46-91; *see also* Dkt. #47, Pg. 108 *through* Dkt. #47-5, Pg. 460.

The volume, depth, and range of emails between King County, LWSD, and Comcast shows unauthorized use of Plaintiff's Property by King County and LWSD was not an isolated or sporadic occurrence. *See* Dkt. #47, ¶¶46-91. Rather, the correspondence reflects a systematic and continuous pattern of unauthorized use that Comcast impermissibly allowed to occur in violation of the Easement for over two decades. *Id.*

King County and LWSD never had any permission to use any portion of Plaintiff's Property at any point in time, much less permission to set up various lines, conduits, ducts, poles, wires, cables, receivers, transmitters, machines, servers, switches, and other devices on Plaintiff's Property. *See* Dkt. #47, ¶¶53-54. Some of the emails are described in detail below.

### c.    Access Logs

In addition, Comcast's access logs show numerous entries by King County personnel performing work on Plaintiff's Property. *See* Dkt. #46, Pg. 36-82.

### 3.    Plaintiff Learns of LWSD's Unauthorized Use of Plaintiff's Property

Comcast's first 30(b)(6) had to be retaken because the first deposition was riddled with Comcast's obstructions and refusal to answer, resulting in sanctions against Comcast.[7]

---

[7] In state court, the state court imposed sanctions for Comcast's first two 30(b)(6) depositions because Comcast's deponents were obstructionists and refused to answer numerous questions. *See* Dkt. #46, ¶¶8-28. The state court also imposed about $10,000 in discovery sanctions on Comcast for Comcast's conduct at its first deposition in the form of having to be responsible for the costs of the Discovery Master presiding over a Comcast's retake depositions. *See* Dkt. #46, Pg. 543-549. Comcast was represented by the same counsel who had sanctions imposed on him for similar

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1  *See* Dkt. #46, ¶¶8-28. After Plaintiff sought and won the right to re-depose Comcast again,

2  Plaintiff asked Comcast whether any other government agency other than King County

3  physically used Plaintiff's Property at any point in time. *Id.*, Pg. 556-559; 575-578. At its

4  retake depositions, both of Comcast 30(b)(6) representatives steadfastly reiterated that no

5  other government agency besides King County physically used Plaintiff's Property at any

6  point in time and that King County had no authority to let anyone else use Plaintiff's

7  Property. *Id.* Unfortunately, that turned out to be untrue as well.

8      After those retake depositions, Plaintiff learned Comcast misled Plaintiff yet again.

9  In mid-May 2025, Plaintiff learned for the first time from emails produced by King County

10 that Comcast also allowed LWSD to physically use Plaintiff's Property in violation of the

11 Easement. *See* Dkt. #47, ¶¶46-91. LWSD's use of Plaintiff's Property began in 2002 when

12 King County assisted LWSD in installing switches on Plaintiff's Property in early 2003:

-----Original Appointment-----
**From:** Su, Hanker
**Sent:** Tuesday, February 11, 2003 4:11 PM
**To:** Kass, Jeff; Stiles, Eric; SOC; 'Lewey, Steve'
**Subject:** LWSD Pilot Project - Switch installation for the Pilot Project
**When:** Tuesday, February 18, 2003 9:30 AM-2:30 PM (GMT-08:00) Pacific Time (US & Canada); Tijuana.
**Where:** Lake Washington School District Rsource Center

Meet at LWSD Resource Center located at 16250 NE 74th St, Redmond ( in Redmond Town Center).

Below are the tasks:
1. Pick up the three switches and one secondary power supply from Steve Lewey.
2.1 Install the "Redmond" switch  in Redmond Hub and confirm the connection to LWSD Resource Center.
2.2 Connect the "Redmond" switch with the secondary power supply already installed in the Hub.
3.1 Install the "Pine Lake" switch in Pine Lake Hub and confirm the connection to "Redmond" switch in Redmond Hub.
3.2 Connect the "Pine Lake" switch with the secondary power supply already installed in the Hub.
4.1 Install the secondary power supply and the "Woodinville" switch in Woodinville Hub and confirm the connection to "Redmond" switch in Redmond Hub.
(Note: The fiber link between Redmond and Woodinville Hub is via a fiber patch at Avondale Hub.)
4.2 Connect the "Woodinville" switch with the secondary power supply.
5. Prepare two more fiber jumper guard rails for Pine Lake and Woodinville switches.  There is already one installed for "Redmond" switch.

23 *See* Dkt. #47-1, Pg. 110-111, 113, 118, 121, 124, 129 ("***Install the "Redmond" switch in***
***Redmond Hub and confirm the connection to LWSD Resource Center***").

24     Hundreds of emails between King County and LWSD reveals Comcast allowed

25 King County to use Plaintiff's Property, and King County, in turn, allowed LWSD to use

27 discovery misconduct in *StonCor Group, Inc. v. Campton et al*, No. 05-01225-JLR, 2006 WL
8553344 (W.D. Wash, Mar. 2, 2006) (Dkt. #166, 176, and 179); *see also* Dkt. #41.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1    Plaintiff's Property. *Id.* Perhaps no email summarizes that relationship better than the email

2    sent by King County on March 6, 2007. That email, shown below, confirms Comcast was

3    aware of LWSD's use of Plaintiff's Property, and Comcast believed allowing King County

4    the right to allow LWSD to use Plaintiff's Property would constitute an improper

**From:** Stremel, Stewart
**Sent:** Tue 3/6/2007 2:50 PM
**To:** McPherson, Ed; Larson, Barbara; Su, Hanker
**Cc:** Dickneite, Lori; Mark, Karen
**Subject:** RE: LWSD Planning Info

Here is my understanding of the LWSD/INET issue as it stands at the moment. This is not complete and is intended as an overview.

**Overview of current condition:**
- The INET hub sites: Woodinville, Redmond and Pinelake are physically managed by Comcast
- In our contract with Comcast, only KC is allowed to place/manage equipment in their site
- If LWSD needed access to the equipment, they would contact us, we would contact Comcast, obtain a key, get access in conjunction with LWSD staff and then return the key
- LWSD originally purchased the 3550's and then transferred ownership to KC but retains management of the devices

**History:**
- The current condition was 'allowed' before from the perspective of INET, LWSD and Comcast
- Comcast has changed it's position feeling that the current arrangement essentially constitutes 'sub-leasing' of the space to another party since we do not manage the devices

**Issues:**
- **Ownership**: it is unclear as to who is responsible for the maintenance of the devices. Whose responsibility is it to pay for CISCO support? And for equipment replacement?
- **Monitoring/Troubleshooting**: currently LWSD handles monitoring of the equipment and KC does not have any visibility into the status of the equipment. In outage / performance conditions coordination has to take place between Comcast, Marconi, KC, LWSD technical staff and potentially the affected site. This coordination process makes for a much longer response time. This is problem is compounded in off-hours situations.
- **SLA's**: with the lack of clarity of responsibilities around the devices it is difficult to maintain SLA's since the county is being held responsible for situations that are outside of their control. (see above comment on Monitoring / Troubleshooting).
- **Security**: In the current arrangement there is no security concern – however – this is because only LWSD customers are attached to the current 3550's. However, if another customer where needed to be connected at these sites it would LWSD, not KC that would be managing the connection / security boundary for the client. This, for obvious reasons, is not a good idea.

21   *See* Dkt. #47-1, Pg. 172, 177, 183, 189, 195, 200, 208, 215; *see also* Dkt. #47, ¶¶73-78.

22          By allowing King County the right to allow LWSD to occupy space on Plaintiff's

23   Property, Comcast improperly subleased Plaintiff's real property. Comcast had no right to

24   allow King County any use of any portion of Plaintiff's Property. And Comcast had no right

25   to allow King County the ability to allow LWSD to make any use of Plaintiff's Property.

26   LWSD's unlicensed occupation on Plaintiff's Property is essentially an improper sublease

27   (LWSD) by an unauthorized sublessee (King County).

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1  Most shocking is that the emails reveal Comcast impermissibly allowed King

2  County to use Plaintiff's Property, and King County, in turn, sold to LWSD the right to use

3  Plaintiff's Property for a substantial financial sum. *See* Dkt. #47, ¶¶79-83. The emails show

4  LWSD paid King County $361,379 for a 5-year period, which was in part for the right to

5  make physical use of Plaintiff's Property, which is listed as the "Redmond Hub" on the

6  agreement between LWSD and King County:

**Lake Washington School District** — CONTRACT: **03LWSD03**

| NON-RECURRING | Cost per site | # of sites | Total Installation Costs |
|---|---|---|---|
| Installation Fee(s)[a] | $1,995 | 1 | $1,995.00 |
| Site Provisioning (if needed) | $15,000 | 0 | $0.00 |
| TOTAL NON-RECURRING: | | | $1,995.00 |

**TOTAL cost of each five year term for the I-Net Fiber Package below: $359,384.00**

Note: Installation fee(s) waived if Contract is signed within 60 days.

Site Contact for all sites is Jeff Bowers 425-702-3271 or Vicki Dahl 425-702-3226

| Site ID | Name | Type | Hub | Street | City | Demarc | I-Net Fiber Package Type LWIAP = Lake Washington I-Net Access Package D= Dark Fiber Access Package B=Basic I-Net Package Option 1 |
|---|---|---|---|---|---|---|---|
| 2101 | Lk Wa Res. Center | Adm | Redmond | 16250 NE 74th | Redmond | MDF Patch Panel. | B |
| 1311 | Wilder | E | Redmond | 22130 NE 133rd | Un KC | MDF Patch Panel. | LWIAP |
| 1182 | Dickinson | E | Redmond | 7300 208th Av NE | Un KC | MDF Patch Panel. | LWIAP |
| 1181 | Evergreen | JH | Redmond | 6900 208th NE | Un KC | MDF Patch Panel. | LWIAP |
| 1177 | Eastlake | HS | Pine Lake | 400 228th Ave NE | Sammamish | MDF Patch Panel. | B |

21  *See* Dkt. #47-1, Pg. 249; *see also* Dkt. #47, ¶¶79-83.

22  Thus, over the course of the 15-year agreement between King County and LWSD,

23  LWSD paid King County at least $1,084,137, including for the right to make physical use of

24  Plaintiff's Property. *Id.* King County had no right to sell access to Plaintiff's Property because

25  Comcast had not sought approval from Plaintiff of King County's presence. Nevertheless,

26  Comcast helped facilitate the misappropriation of Plaintiff's Property for LWSD's benefit:

27

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 11
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070  Fax: (425) 646-3467

**From:** Hunt, Darryl [mailto:Darryl.Hunt@kingcounty.gov]
**Sent:** Tuesday, February 17, 2009 4:28 PM
**To:** Lewey, Steve
**Subject:** RE: Switch upgrade

Steve,

Like the other switches in the hubs, KC needs to have equipment ownership… In the past we have used this concept of "temporary ownership" for the duration of a service… after service ends the equipment reverts back to the original owner. We have used this "temporary ownership" concept in the past at KC. I have attached a draft "bailment agreement" for LWSD review. If this is acceptable we can use it for the upgrade of the new switches.

Let me know if you have any questions.

Best

DH

---

**From:** Lewey, Steve [mailto:slewey@lwsd.org]
**Sent:** Tuesday, February 17, 2009 11:36 AM
**To:** Hunt, Darryl
**Subject:** FW: Switch upgrade

Hi…new switches just came in and we are looking at the calendar to plan an outage. Can we consider *weekend support* from INET for a fee to place the new switches at Redmond and Pinelake Hub?

Thank you!

*See* Dkt. #47, ¶¶79-84; *see also* Dkt. #47-2, at 2-3.

And as a result, LWSD installed $21,000 worth of networking switches on Plaintiff's Property for LWSD, which is equivalent to roughly $75,000 today:

**EQUIPMENT SUBJECT TO CONTRACT**

List Equipment by description, serial number, etc. Include value, maximum rated weight and description of condition.

**Cisco part number, description and value**

| P/N | Description | Value | Serial Number |
|---|---|---|---|
| Model:3560 DE-12D | Cisco Ethernet Switch – Redmond Hub | $21,000 | SEC ████████ |
| Model:3560E-12SD-E | Cisco Ethernet Switch – Pine Lake Hub | $20,000 | SEC ████████ |
| | | | |

**Description of condition** - New

**Contact Information:**

Jeff Bowers / LWSD Network Manager
16250 NE 74th Street
Redmond WA 98052
Phone: (425) 702-3200

*See* Dkt. #47, ¶¶85-86; *see also* Dkt. #47-2, Pg. 24-27.

Comparing the emails King County and LWSD exchanged in March 2009 (Dkt. #47-2, Pg. 12) with the entries on the sign-in sheet provided by Comcast (Dkt. #46, Pg. 75) provides corroboration the work did in fact take place as described in emails. For example, comparing King County's March 23, 2009 email with the entries on the Comcast sign-in

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1  sheet—such as the date of the work, the individual performing the work, the agency

2  performing the work (King County), the type of work being done, and the time of arrival—

3  gives powerful corroboration that the work as contemplated in emails did in fact take place:

## Redmond Secondary Hub

| DATE | NAME | COMPANY | Work Being Done | TIME IN | TIME OUT |
|------|------|---------|-----------------|---------|----------|
| 3/31 | JEFF KASS | KING COUNTY | INSTALL SWITCH | 9:50 A | 10:30 |
| 4/1 | Ron | Comcast | CAPACITY | 1230 p | 300 A |
| 4-3 | Ron | " | " | 1100 A | 1200 P |
| 4-5 | Ron | " | CHANGE BAD FIBER | 1125 A | 300 P |
| 4-7 | JEFF KASS | KING COUNTY | DOCUMENTATION | 10:00 A | 10:23 |

**From:** Kass, Jeff [mailto:Jeffrey.Kass@kingcounty.gov]
**Sent:** Monday, March 23, 2009 10:30 AM
**To:** Bowers, Jeff; Steve Lewey; Mitch Sickler
**Cc:** Hunt, Darryl; Su, Hanker; Travis, Chuck; McPherson, Ed; Grannan, Fred; Shawn Olson; Siemers, John R.
**Subject:** LWSD switch upgrade - Redmond and Pine Lake hubs

Hi Jeff, Steve, and Mitch,

Per our con-call this morning, here are the steps and estimated timing we anticipate in the upgrade.  I suspect it might take more time to accomplish this but this is an estimate and I do have the whole day reserved.

The ETA for fiber jumpers ((5)  SC/APC to LC 10 Meter, (4)  SC/APC to LC 8 Meter) is 3/30 Monday.  If there is time, I-Net labels jumpers.

Start upgrade on 3/31 Tuesday.

1. 7:30AM   I-Net Pickup hub keys for Redmond and Pine Lake from the Squibb hub.
2. 8:00AM   I-Net Pickup new switches for Redmond and Pine Lake from the Resource Center.  Place KC tags on them.
3. 8:30AM   I-Net Start to rack the 3560 in the Redmond Hub and power up.  By the way we confirmed the distance from the ears to the back as 18in.
4. 9:00AM   I-Net. Lay in new overhead jumpers that will connect to Wilder, Dickinson, Evergreen, and the Woodinville 3550 switch and label them.
5. 9:30AM   I-Net Cutover existing and new fiber patches over to new switch // Jeff B and Mitch test from the Resource Center to reachable end points
6. 10:00AM  I-Net After testing confirms endpoints are reachable, remove old equipment for return to Resource Center.  Leave old patches in trough unless crowded.
7. 10:30AM  I-Net Head to Pine Lake Hub
8. 11:00AM  I-Net Lay in new overhead jumpers that will connect to Alcott, Inglewood, Eastlake, and Margaret Mead, and label them.
9. 11:30AM  I-Net Rack new switch and power up. Cutover connections to Redmond switch and Schools. Request JB and Mitch to confirm connections.
10. 12:00 Noon  I-Net Remove old equipment from Pine Lake Hub.  Remove old jumpers from crowded trough.
11. 12:30PM I-Net  Return old equipment to Resource Center.
12. 1:00PM I-Net  Return keys to Squibb Hub.

Later – change I-Net documentation to reflect upgrade. Test I-Net mgt connectivity to new switches.

Needed: serial numbers for the new switches (if they have not already been provided) .  Please verify that the power plugs are 5-15P (i.e. parallel blades).

Please reply with any comments you may have.

Thank you,
Jeff

*Compare* Dkt. #46, Pg. 75 *with* Dkt. #47, Pg. 12.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

Comcast was aware King County was allowing LWSD to install machines and other equipment on Plaintiff's property because each connection is mapped and logged into what is known as Comcast's comprehensive plant diagram. *See* Dkt. #47-4, Pg. 317.

### 4.    Plaintiff Has Incurred Substantial Damages Due to Comcast's Breach of the Licensing Agreement

Plaintiff damages expert estimates Plaintiff is entitled approximately $2,644,273 in back rent due to King County's unauthorized use of Plaintiff's Property between 2000 through 2024. *See* Dkt. #46, Pg. 84-96.

## III.    AUTHORITY

### A.    Summary Judgment Standard

In Washington, "[c]ontract interpretation is generally a question of law for the Court. *Skansgaard v. Bank of Am., N.A.*, 896 F. Supp. 2d 944, 947 (W.D. Wash. 2011); *Johnson v. Allstate Ins. Co.*, 126 Wn. App. 510, 515, 108 P.3d 1273 (2005) ("a court interprets a contract as a question of law."); *Knipschield v. C-J Recreation, Inc.*, 74 Wn. App. 212, 215, 872 P.2d 1102 (1994) ("[i]nterpretation of the terms of a contract is a question of law").

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Once the movant has satisfied the burden of showing there is no material factual dispute and that it is entitled to prevail as a matter of law, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1059 (9th Cir. 2012).

Here, summary judgment is appropriate because, as a matter of law, Comcast had a contractual obligation to procure Plaintiff's permission and pay Plaintiff compensation *before* Comcast could let a party other than Comcast, Comcast's affiliate companies, and Vista's successor (Comcast) make "***any use***" of Plaintiff's Property for "***any purpose.***"

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1    Given the unequivocal terms of the Easement, there is no genuine issue of material

2    fact that by allowing King County and LWSD to physically use Plaintiff's property without

3    first procuring Plaintiff's permission and without first paying Plaintiff compensation violates

4    Section 4 of the Easement because King County and LWSD do not meet the Easement's

5    definitions of Grantee (Vista/Comcast), Grantee's successor (Comcast), or Grantee's affiliates

6    (Vista/Comcast's affiliates).

**B.      Comcast Breached its Contractual Obligations and its Implied Duty of Good Faith When it Breached the Licensing Provision of the Easement**

**1.      Standard for Breach of Contract in Washington**

Washington law applies in interpreting the Easement. To prevail on its breach of

contract claim under Washington law, Plaintiff must prove: (1) a valid contract; (2) breach of

a duty arising under that contract; and (3) damages proximately caused by the breach. *Nw.*

*Indep. Forest Mfrs. v. Dep't of Labor and Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

In order for a breach of a contract to be actionable, the breach does not need to be

material but only amount to a "failure to perform a contractual duty." *TMT Bear Creek*

*Shopping Ctr., Inc. v. Petco Animal Supplies, Inc.*, 140 Wn. App. 191, 210, 165 P.3d 1271

(2007). The remedy is intended "to place the injured party in the same economic position it

would have occupied had the contract been fully performed." *Id.* at 211, 165 P.3d 1271.

Washington courts "interpret clear and unambiguous [contract] terms as a question

of law[,]" but an ambiguous provision, "one fairly susceptible to two different, reasonable

interpretations" is a question for the factfinder. *Wm. Dickson Co. v. Pierce Cty.*, 128 Wn.

App. 488, 493-94, 116 P.3d 409 (2005).

Washington follows the objective manifestation theory of contracts. *Hearst*

*Commc'ns, Inc. v Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Under that

approach, "the subjective intent of the parties is generally irrelevant if the intent can be

determined from the actual words used." *Id.* at 503-04. Washington law requires courts to

"give words in a contract their ordinary, usual, and popular meaning unless the entirety of the

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

agreement clearly demonstrates a contrary intent." *Id*. at 504, 115 P.3d 262.

"If the language of a contract is clear and unambiguous, the Court must 'enforce the contract as written; it may not modify the contract or create ambiguity where none exists.'" *Hold Sec. LLC v. Microsoft Corp.*, 705 F. Supp. 3d 1231, 1238-39 (W.D. Wash. 2023) (citing *Lehrer v. State Dep't of Social & Health Servs.*, 101 Wn. App. 509, 515, 5 P.3d 722 (2000)). While nothing is ambiguous about the licensing provision in Section 4 of the Easement, to the extent there is any ambiguity, Washington law requires "ambiguous contract language is strictly construed against the drafter." *Hold Sec. LLC*, 705 F. Supp. 3d at 1239 (citing *Jones Assocs., Inc. v. Eastside Props., Inc.*, 41 Wn. App. 462, 468, 704 P.2d 681 (1985)).

      **2.**      **By Allowing King County and LWSD to Physically Use Plaintiff's Property, Comcast Breached the Easement**

It is indisputable King County is not the Grantee (Vista/Comcast), Grantee's affiliate companies (Vista/Comcast's affiliate companies), or Grantee's successor under the Easement. Thus, "***any use***" by King County or LWSD for "***any purpose***" was subject to the permission and compensation clause under Section 4 of the Easement.

It is indisputable that "***any use***" of Plaintiff's Property by King County or LWSD for "***any purpose***" required Comcast to first procure Plaintiff's permission and pay Plaintiff compensation for the use of Plaintiff's Property under Section 4 of the Easement. "***Any use*** of the Property" for "***any purpose***" is unambiguous and does not leave room for competing interpretations. "***[A]ny use*** of the Property" for "***any purpose***" is expansive and covers every conceivable use of Plaintiff's Property, including any physical use by King County or LWSD. Afterall, Comcast admits installing any kind of equipment, machine, or system on Plaintiff's Property is considered use of Plaintiff's Property. *See* Dkt. #46, Pg. 556-556; 574-575.

Even if competing interpretations can be reasonably advanced (it cannot), Comcast drafted the Easement (*see* Dkt. #47, ¶23), and under Washington law, any ambiguities (if any) ***must*** be construed against Comcast because the Easement does not include a *contra perforatum* clause. It would work an injustice upon Plaintiff to allow Comcast to draft the

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

Easement, breach the Easement by allowing others to use Plaintiff's Property, and then construe any ambiguities (if any) against Plaintiff notwithstanding Comcast's decision to not include a *contra perforatum* clause.

Plaintiff's satisfies each element of its breach of contract claim: the Easement is a valid contract; Comcast breached its obligations under Section 4 of the Easement; and Plaintiff incurred damages as a result of Comcast's breach in the form of lost licensing revenue.

Comcast defecated on Plaintiff's rights under Section 4 of the Easement. In fact, Comcast's conduct in relation to Plaintiff's property has been so outrageously abhorrent that Comcast employees have even—quite literally—defecated on Plaintiff's property (and not in a bathroom). *See* Dkt. #6, ¶¶72-79. The situation got so out of hand that Comcast hired a biohazard company to perform a "biohazardous scene normalization" so that it could eliminate the "gross decontamination" caused by Comcast employees defecating on Plaintiff's property. *Id*. And when Plaintiff sued Comcast for defecating on its property and concealing the cleanup efforts, Comcast pointed to strict compliance with the Easement, claiming that the Easement did not require Comcast to tell Plaintiff that its employees had defecated on Plaintiff's Property. *See* Dkt. #6, ¶¶72-79; *see also* Dkt. #11, 24:11-25:24.

Specifically, while Comcast "[a]dmit[s] that excreting solid human waste outside of a bathroom is disgusting and repulsive," and while Comcast "[a]dmit[s] that Comcast takes these allegations very seriously," Comcast "[denies] that Comcast is required to disclose such events [of its employees defecating on Plaintiff's property] to Plaintiff pursuant to the terms of the Easement." *See* Dkt. #11, 24:11-25:24. And where, as here, Comcast insists on strict compliance with the Easement, strict enforcement of Section 4 of the Easement is necessary.

### 3. Standard for Breach of an Implied Duty of Good Faith and Fair Dealing in Washington

In Washington, "[a] duty of good faith and fair dealing is implied in every contract." *Microsoft Corp. v. Motorola, Inc. ("Microsoft")*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013) (citing *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 807 P.2d 356, 360 (1991)).

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1   "This duty requires the parties to a contract to cooperate with each other so that each

2   may obtain the full benefit of performance, even if the parties have different requirements

3   under the contract." *Id.* (citing *Metro. Park Dist. of Tacoma v. Griffith,* 106 Wn.2d 425, 723

4   P.2d 1093, 1100 (1986)). "The implied duty of good faith and fair dealing arises out of the

5   obligations created by a contract and only exists in relation to the performance of specific

6   contract terms." *Id.* (citing *Keystone Land & Dev. Co. v. Xerox Corp.,* 152 Wn.2d 171, 94

7   P.3d 945, 949 (2004)). "Thus, a party's obligation is only to perform the obligations imposed

8   by the contract in good faith." *Id.* (citing *Barrett v. Weyerhaeuser Co. Severance Pay Plan,* 40

9   Wn. App. 630, 700 P.2d 338, 342 n. 6 (1985)).

10   Courts in this district explain that "[t]here is no one-size-fits-all definition of good

11   faith and fair dealing. Rather, the duty varies somewhat with the context in which it arises. It

12   may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of a

13   bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in

14   the other party's performance; (4) abuse discretion granted under the contract; or (5) perform

15   the contract without diligence. This list is in no way exhaustive, and indeed it would be nearly

16   impossible to create a complete catalogue of conduct that violates the duty of good faith and

17   fair dealing." *Microsoft*, 963 F. Supp. 2d at 1184 (citations omitted).

18   "Good faith performance of a contract requires being faithful to the agreed common

19   purpose of the contract and performing consistently with the justified expectations of the

20   other parties." *Id.* (citing *Frank Coluccio Const. Co., Inc. v. King County,* 136 Wn. App. 751,

21   150 P.3d 1147, 1155 (2007) and Restatement (Second) of Contracts § 205 cmt. a). Applying

22   Washington law, the Ninth Circuit has explained that "[a] party can breach the duty of good

23   faith and fair dealing by acting dishonestly." *Microsoft*, 963 F. Supp. 2d at 1185 (citing

24   *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001)).

25   In particular, the Ninth Circuit has further explained that "[g]ood faith performance

26   or enforcement of a contract emphasizes faithfulness to an agreed common purpose and

27   consistency with the justified expectations of the other party" and that ""[s]ubterfuges and

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 18
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1  evasions violate the obligation of good faith in performance even though the actor believes

2  [their] conduct to be justified…[F]air dealing may require more than honesty." It also

3  provides that "evasion of the spirit of the bargain" will constitute bad faith." *Scribner*, 249

4  F.3d at 910 (9th Cir. 2001). Specifically, the Ninth Circuit explained "that Washington courts

5  would follow these principles if faced with a question like the one before us. Good faith *limits*

6  the authority of a party retaining discretion to interpret contract terms; it does not provide a

7  blank check for that party to define terms however it chooses." *Id.* (emphasis original).

8         **4.    Comcast Breached Its Implied Duty of Good Faith and Fair
                   Dealing**

9

10        Plaintiff should also be granted summary judgment on its claim that Comcast's

11  breached of the implied duty of good faith and fair dealing stemming from Comcast's breach

12  of the licensing provision contained in Section 4 of the Easement. For over two decades,

13  Comcast engaged in precisely the same type of bad faith conduct this Court identified in

14  *Microsoft*, 963 F. Supp. 2d at 1184 as violating the duty of good faith and fair dealing.

15        Here, the spirit of Plaintiff's bargain under the Easement was predicated on

16  exclusivity—defined clearly by the limitation on "any use" for "any purpose"—yet Comcast

17  completely undermined this intent by acting as a broker for unauthorized parties. Comcast

18  evaded the fundamental trade-off under the Easement: they secured access rights only by

19  promising to exclude others, yet they kept surreptitiously providing others access while

20  discarding their promise. Comcast's performance was fundamentally defective; an Easement

21  that forbade "any use" for "any purpose" by others required a standard of vigilance Comcast

22  ignored for over two decades.

23        And because concealed from Plaintiff the fact that others were making use of

24  Plaintiff's property, Comcast interfered with Plaintiff's right to compensation under Section 4.

25  Comcast exploited Plaintiff's Property as a cost-free staging ground for third parties, taking

26  advantage of Plaintiff's Property to facilitate unauthorized occupancy for others while

27  shielding themselves from the financial burden of securing proper permissions from Plaintiff.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 19
Case No. 2:25-cv-01553-BJR

Comcast's breach of its duty of good faith and fair dealing is reflective of its poor conduct even after litigation began.[8] As Gov. Ferguson described it, "Comcast sent an army of corporate lawyers into court to try to avoid accountability." In the first case, Comcast was untruthful about King County's physical use of Plaintiff's Property. *See* Dkt. #46, Pg. 19. Even Comcast's counsel tried to conceal that use: "There is no physical use of – by third parties." *Id.*, Pg. 209:11-12. And when Plaintiff uncovered King County's unauthorized use and confronted Comcast about it, Comcast swore there was no one else that physically used Plaintiff's Property. *See* Dkt. #46, Pg. 556-559; 575-578. That turned out to be untrue, as well.

Plaintiff then uncovered hundreds of emails showing LWSD's use of Plaintiff's Property. And given how tightly Comcast controls access to the building (Dkt. #47, ¶¶89-91 and Dkt. #46, Pg. 577:9-18) and given how Comcast maintains detailed plant diagrams of each connection inside the building (Dkt. #47-4, Pg. 317), Comcast was aware of King County and LWSD's use all along, but it withheld sharing that fact with Plaintiff so as to deprive Plaintiff of the benefit of the bargain under the Easement, all while enriching itself at Plaintiff's expense from the business relationship Comcast, King County, and LWSD had.

Afterall, emails from King County show that Comcast, King County, and LWSD each understood the arrangement that existed: Comcast allowed King County to use Plaintiff's Property, and King County allowed LWSD to use Plaintiff's Property. *See* Dkt. #47-1, Pg. 249. Comcast admitted that Comcast and King County enjoyed a mutually beneficial financial relationship for the use Plaintiff's Property. *See* Dkt. #46, at 563:24-564:12. Comcast profited from King County's use. *Id.* And King County profited from LWSD's use when it sold to LWSD the right to place equipment on Plaintiff's Property. *Id.* The only person left without the benefit of the bargain was Plaintiff—and that's squarely because of ***Comcast's*** failure to be "faithful to the agreed common purpose of the contract and performing consistently with the justified expectations of [Plaintiff]."

---

[8] Plaintiff asks the Court to take judicial notice pursuant to Rule 201 as set forth in Plaintiff's First Request for Judicial Notice (Dkt. #42 and 56) and Plaintiff's Second Request for Judicial Notice (Dkt. #57) for the proposition Comcast admitted the first case did not include the claims in this case.

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1

2

**C.    Comcast Breached its Obligations Under RMC 5.60.230(E) and RMC 12.14.510 When it Allowed Unauthorized Use of Plaintiff's Property**

3

In addition to violating Section 4 of the Easement, Comcast also violated RMC

4

5.60.230(E) and/or RMC 12.14.510 when Comcast allowed King County and/or LWSD to

5

make physical use of Plaintiff's property without paying Plaintiff compensation for such use.

6

Comcast admits it is subject to regulation under Title 5 (Dkt. #11, at 42:18-25) and

7

Title 12 of the Redmond Municipal Code ("RMC") (Dkt. #11, at 44:5-10).

8

By allowing King County and/or LWSD to make unauthorized use of Plaintiff's

9

property, and by refusing to reimburse Plaintiff for such unauthorized use, Comcast violated

10

RMC 5.60.230(E), which provides that, "*[a]ny damage caused to* the rights-of-way or public

11

*or private property by grantee or those performing work on a grantee's behalf <u>shall be</u>*

12

*<u>promptly repaired or replaced by grantee to the satisfaction of the property owner</u>* or to the

13

City." (emphasis added). By allowing King County to make uncompensated use of Plaintiff's

14

property, Comcast caused Plaintiff damages in the form of lost rents. *See* Dkt. #46, Pg. 84-96.

15

Under RMC 5.60.230(E), Comcast was obligated to "promptly…replace[]…*to the*

16

*satisfaction of the property owner*" any damages Comcast caused, including damages

17

Comcast caused by letting unauthorized parties occupy the Property. That includes paying for

18

Plaintiff's damages in the form of lost rents "*to the satisfaction of the property owner.*"

19

Similarly, Comcast also violated RMC 12.14.510, which provides "[n]o Grantee or

20

other Person *shall take any action or permit any action to be done which <u>may impair or</u>*

21

*<u>damage</u>* any City property, public ways, other ways *or other property*, whether publicly *or*

22

*privately owned*, located in, on or adjacent thereto." (emphasis added). For the same reason

23

Comcast violated RMC 5.60.230(E), it violated RMC 12.14.510 because Comcast's

24

misappropriation of Plaintiff's property was a damage or impairment under RMC 12.14.510.

25

Plaintiff has a right to enforce Comcast's breach of RMC 5.60.230(E) and RMC

26

12.14.510 because Plaintiff is the only party who can enforce RMC 5.60.230(E) and RMC

27

12.14.510 relating to its private property. "When a statute does not explicitly create a private,

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 21
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

1    cause of action, a cause of action may be implied from a statutory provision when the

2    legislature creates a right or obligation without a corresponding remedy." *Carr v. State ex rel.*

3    *Washington State Liquor Control Bd.*, 188 Wn. App. 212, 222, 352 P.3d 849, 854 (2015).

4    Three factors are used to determine if a private cause of action is implied in a statute: "(1)

5    whether the plaintiffs are within the class of persons for whose benefit the statute was

6    enacted, (2) whether legislative intent supports, creating or denying a remedy, and (3)

7    whether implying a remedy is consistent with the underlying purpose of the legislation." *Id.*

8            The first requirement is met because RMC 5.60.230(E) and RMC 12.14.510 each

9    refer to preventing harm to private property, something only the private owners have standing

10   to enforce. The second and third requirements are met because it would make no sense for the

11   City to create a statute prohibiting Comcast from causing harm to private property without

12   creating a mechanism to enforce those private property rights. If Plaintiff—as the only party

13   who has standing to enforce its private property rights—cannot compel compliance,

14   Comcast's obligations under RMC 5.60.230(E) and RMC 12.14.510 would be meaningless.

15           **D.      Comcast Breached its Statutory Duties Under Federal and Municipal**
16           **Law When it Failed to Pay for Property Taxes**

                    **1.      Comcast Breached 47 U.S.C. §541(a), RMC 12.14.510, and RMC**
17                   **5.60.230(E) When it Failed to Pay its Share of Property Taxes**

18           Comcast is responsible for property taxes associated with Comcast's building on

19   Plaintiff's Property under 47 U.S.C. § 541(a)(2)(B)-(C), RMC 5.60.230(E) and/or RMC

20   12.14.510, and Comcast's failure to reimburse Plaintiff property taxes associated with

21   Comcast's building that Plaintiff paid is a breach of Comcast's statutory duties under 47

22   U.S.C. § 541(a)(2)(B)-(C), RMC 5.60.230(E) and/or RMC 12.14.510.

23           47 U.S.C. § 541(a)(2)(B) obligates "the cost of the installation, construction,

24   operation,…of such facilities be borne by the cable operator" and 47 U.S.C. § 541(a)(2)(C)

25   provides "that the owner of the property be justly compensated by the cable operator for any

26   damages caused by the installation, construction, operation,…of such facilities by the cable

27   operator." RMC 5.60.230(E) and RMC 12.14.510 both provide that Comcast is liable for

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 22
Case No. 2:25-cv-01553-BJR

1    damage and impairment caused by Comcast. Property taxes are a type of damage and/or

2    impairment that falls within the scope of RMC 5.60.230(E) and RMC 12.14.510.

3         Section 541(a)(2) provides a statutory basis for a property owner to seek

4    compensation for damages caused by a cable company. *Cable Holdings of Georgia, Inc. v.*

5    *McNeil Real Est. Fund VI, Ltd.*, 953 F.2d 600, 604 n.2 (11th Cir. 1992) (citing 47 U.S.C. §

6    541(a)(2)(C) and holding that "the Cable Act does provide that property owners be

7    compensated for the *damages* caused by a franchised cable company") (emphasis original).

8         In *Centel Cable Television Co. of Fla. v. Burg & DiVosta Corp.*, 712 F. Supp. 176,

9    177-78 (S.D. Fla. 1988), the court held that "***Section 621(a)(2)(A)-(C) of the Cable Act*** (47

10   U.S.C.A. § 541(a)(2)(A)-(C)) ***provides Burg & DiVosta with statutory protection*** as to the

11   manner of Centel's access to and work in The Hamptons. ***Section 621(a)(2)(C), as well as the***

12   ***common law, permits Burg & DiVosta to seek compensation <u>for any harm caused by</u>***

13   ***<u>Centel</u>.***" (emphasis added). Another court favorably cited *Centel Cable* for an owner's right

14   to seek compensation under 47 U.S.C. § 541(a)(2)(A)-(C) for "any harm" caused by a cable

15   company. *Cable TV Fund 14-A, Ltd. v. Prop. Owners Ass'n Chesapeake Ranch Ests., Inc.*,

16   706 F. Supp. 422, 429 (D. Md. 1989).

17        There is no genuine issue of material fact that property taxes associated with

18   Comcast's building on Plaintiff's Property falls within "***the cost of*** the installation,

19   ***construction, operation***,…***of such facilities***" under 47 U.S.C. § 541(a)(2)(B). And where 47

20   U.S.C. § 541(a)(2)(B) obligates such costs to "be borne by the cable operator," Comcast is

21   plainly liable for property taxes associated with Comcast's building on Plaintiff's Property.

22        Similarly, there is no genuine issue of material fact that property taxes associated

23   with Comcast's building on Plaintiff's Property constitutes "***damages caused by*** the

24   installation, ***construction, operation***,…***of such facilities***" under 47 U.S.C. § 541(a)(2)(C).

25   And where 47 U.S.C. § 541(a)(2)(C) provides "that the owner of the property be justly

26   compensated by the cable operator for any damages caused by the installation, ***construction,***

27   ***operation***…***of such facilities,***" Plaintiff is entitled to summary judgment on the issue of

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 23
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

Comcast's liability for property taxes associated with Comcast's building.

It is indisputable property taxes were assessed for Comcast's building. *See* Dkt. #46, Pg. 87-88. The property taxes assessed were not for the Easement, but for the building Comcast built and occupies on the Easement on Plaintiff's Property. Comcast admits it does not pay the tax—which Plaintiff paid. *Id.*, Pg. 565. Comcast also admits that property taxes are an ongoing expense. *Id.* Between 2015-2025, Plaintiff has paid $99,794.45 in property taxes, of which $64,866.39 is Comcast's obligation. *See* Dkt. #47, ¶¶104-109; *see also* Dkt. #46, Pg. 87-88.

Comcast's position is that Comcast does not have an obligation to pay property taxes under the Easement. *See* Dkt. #46, Pg. 560; 580. The **only** reason Comcast claims it is not reimbursing Plaintiff the tax is because Comcast erroneously believes that the Easement does not obligate it to pay the tax. *Id.*, Pg. 560. But Comcast's obligation to pay property tax arises from the statutory obligations imposed on Comcast under 47 U.S.C. § 541(a)(2)(B)-(C), and RMC 5.60.230(E), and RMC 12.14.510.

When Comcast was asked if Comcast is responsible for paying for damages it caused to Plaintiff's Property, Comcast said it will not cover those damages until a judge or a court said they were responsible for the damages. *Id.*, Pg. 581-582. The Court should accept that invitation and enter summary judgment holding Comcast has an obligation under the statutes cited above to pay for property taxes associated with Comcast's building. Under no circumstance is it fair for Plaintiff to have to pay for property taxes for a building Comcast built and solely occupies along with its unauthorized occupants.

### 2.    47 U.S.C. § 207 Provides a Mechanism for Plaintiff to Enforce its Rights Under 47 U.S.C. § 541(a)(2)(B)-(C)

47 U.S.C. §§206-207 provides Plaintiff with a statutory avenue to enforce its rights under 47 U.S.C. § 541. *AT&T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899 (9th Cir. 2002).

## IV.    CONCLUSION

The Court should grant Plaintiff summary judgment on the four issues listed above.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 24
Case No. 2:25-cv-01553-BJR

DATED this 9th day of February, 2026.

VANDER WEL, JACOBSON, & YOKE, PLLC


By: /s/ Ryan M. Yoke
Ryan M. Yoke, WSBA #46500

*Attorneys for Plaintiff*

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 25
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070   Fax: (425) 646-3467

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I had the foregoing document electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to registered counsel of record in this action.

DATED this 9th day of February, 2026 in Seattle, Washington.


/s/ Ryan M. Yoke
Ryan M. Yoke

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 26
Case No. 2:25-cv-01553-BJR

VANDER WEL, JACOBSON & YOKE, PLLC
1540 140th Ave NE, Suite 200
Bellevue, WA 98005
Phone: (425) 462-7070  Fax: (425) 646-3467